BRYAN OVERPECK *v.* JOHN E. DOWD, ADMINISTRATOR OF THE ESTATE OF ALICE HENDRIXSON, ABSENTEE, HELEN LUCILLE KIMBALL, DUSTIN BRUCE KIMBALL AND STATE OF INDIANA.

[No. 1-275A216. Filed July 25, 1977. Rehearing denied November 4, 1977. Transfer denied May 15, 1978.]

*Clelland J. Hanner,* of Rockville, *James P. Buchanan,* of Rockville, *John B. McFaddin,* of Rockville, for appellant.

*John S. Grimes,* of Indianapolis, for appellee Dowd, *Ted B. Lewis, Samuel A. Fuller, Stewart, Irwin, Gilliom, Fuller & Meyer,* of Indianapolis, for appellees *Kimball, Ibey, Muhlebach, Celte, Carpenter, Hanna and Eaton.*

ROBERTSON, C.J.—Bryan Overpeck brings this appeal from orders determining heirship entered in the absentee estate proceedings of Alice Hendrixson, Ida Hendrixson, and Laura Hendrixson. He raises two issues:

(1) Did the trial court err when it refused to permit counsel for Overpeck to participate in the hearing on the petitions to determine heirship?

(2) Did the trial court have jurisdiction over the Hendrixson estates?

Because of our resolution of the second issue, we do not address the first issue.

We reverse and remand.

Ruth Cox Vaught died December 9, 1972, leaving a Will which named Rockville Christian Church as sole beneficiary and Rockville National Bank as executor of her estate. On May 9, 1973, her executor filed Petition for Construction of the Will of James W. Puett, Deceased. The portions of Puett's Will requiring construction were as follows:

"I gave and devise to my said wife Jane H. Puett all of my real estate to have, hold and use during her life time and

at her death, I give and devise to my niece Anna Puett Cox the following part of my real estate to-wit: . . . [Tract I]. "Also after the death of my said wife I give and devise the residue of my real estate, (other than said eighty acre tract) to said Ruth P. Cox, to have and hold during her life time and upon the death of my said wife and said Ruth, I give and devise said residue of my real estate to the children of said Ruth P. Cox, then living whether they be born before or after my death, it being my intention and will that said residue shall after the expiration of said life estate therein descend to and become the property in fee simple of such child or children as she may hereafter bear and have living at such time whether the same be born before or after my death, but should there be none living at such time then I give and devise such residue of my real estate to the three daughters of my sister Lousia Hendrixson by her second marriage, namely Alice, Ida and Laura. [Tract II]."[1]

The trial court entered its Decree Construing the Will of James W. Puett, Deceased, on January 21, 1974, and included these findings:

(a) Ruth Cox Vaught was the same person as the Ruth P. Cox named in Puett's Will.

(b) Ruth Cox Vaught was not survived by any child or children.

(c) Ruth Cox Vaught took only a life estate in Tracts I and II; these life estates lapsed upon her death on December 9, 1972.

(d) Title to Tract I vested in fee simple in Bryan Overpeck on December 9, 1972.

(e) Title to Tract II vested in Alice, Ida, and Laura if they survived Ruth Cox Vaught; if Alice, Ida, and Laura did not survive Ruth Cox Vaught, the devise of Tract II lapsed and title to Tract II vested in the heirs of Jane H. Puett, wife of James W. Puett, pursuant to the laws of intestate succession.

(f) The court was without sufficient evidence for it to determine whether Alice, Ida, and Laura survived Ruth Cox Vaught.

The decree concluded as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DE-CREED that fee simple title in Tract I of Item Second of

---

1. James Puett died in 1909 and Jane Puett died in 1917. Bryan Overpeck was a great-nephew of Jane Puett.

James W. Puett's last will, described as follows: [description] vested in Bryan Overpeck on the 9th day of December, 1972.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court has insufficient evidence before it at this time to complete the construction of the last will and testament of James W. Puett as to Tract II, and that the guardian ad litem heretofore appointed by this Court to represent the three daughters of Lousia Hendrickson by her second marriage, namely, Alice, Ida and Laura, should take such steps as he may deem necessary and proper to protect the interest of said missing heirs under the laws of the State of Indiana pertaining to missing heirs."

The record reveals a nunc pro tunc entry dated April 15, 1974. This entry restated the findings set forth as (a), (b), (c), and (d) in the preceding summary of the January 21, 1974, decree. With reference to Tract II, the nunc pro tunc entry provided:

"Court further finds that under the language of Item Second of the will of James W. Puett, a remainder interest in all of the remaining real estate owned by James W. Puett at the time of his death, herein referred to as Tract II, was limited to the three daughters of the testator's sister, Lousia Hendrixson, by her second marriage, namely, Alice, Ida and Laura."

The entry concluded as follows, without reference to Tract II:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that fee simple title in Tract I of Item Second of James W. Puett's last will, described as follows: [description] vested in Bryan Overpeck on the 9th day of December, 1972.

"And The Clerk is directed to give notice of this entry to all parties.

"Dated this 15 day of April, 1974."

On June 25, 1975, the trial court entered its third decree construing the Puett Will:

"This matter being before the Court on the Petition of The Rockville National Bank of Rockville, Indiana, Executor, to construe the Will of James W. Puett, deceased;

"And the Court being advised of the Report of John Dowd, Guardian Ad Litem of Ida Hendrixson, Laura Hendrixson and Alice Hendrixson;

"And the Court being further duly advised; Now finds that all parties having an interest herein are properly before the Court;

"And the Court further finds that under the Will of James Whitcomb Puett, duly probated in this Court, Alice Hendrixson, Laura Hendrixson and Ida Hendrixson acquired a remainder interest after the successive life estates of Jane H. Puett and Ruth Cox Vaught in and to the following described real estate situate in Parke County, Indiana, to-wit: [description of Tract II] which remainder interest was subject to the two conditions that Ruth Cox Vaught die without children and also that Ida Hendrixson, Alice Hendrixson and Laura Hendrixson survive the longest lived of Jane H. Puett and Ruth Cox Vaught;

"And the Court further finds that Ruth Cox Vaught did die without ever having children but that Ida Hendrixson, Alice Hendrixson and Laura Hendrixson, and each of them, did die before Ruth Cox Vaught and that by reason of the time of such deaths the condition precedent to the survival of the said Ida Hendrixson, Laura Hendrixson and Alice Hendrixson was never fulfilled, the said contingent remainders never vested and the interests of Ida Hendrixson, Laura Hendrixson and Alice Hendrixson lapsed and the said real estate reverted to the estate of James Whitcomb Puett.

"WHEREFORE, it is now adjudged and decreed that upon the death of Ruth Cox Vaught the above described real estate passed under the residuary clause of the said Will of James Whitcomb Puett to his widow and sole heir, Jane H. Puett, and upon her death intestate to her heirs."

None of these decrees in the Vaught estate were challenged. We now describe the sequence of events which these decrees prompted.

On January 22, 1974, one day after the court's first decree construing Puett's Will, Rockville Christian Church filed petitions to open estates for Alice, Ida, and Laura as absentees, pursuant to the provisions of IC 1971, 29-2-5-1 (Burns Code Ed.); these estates were opened March 26, 1974, and will be referred to in this opinion as the Hendrixson estates.

The court made the nunc pro tunc entry April 15, 1974, and on April 26, 1974, the administrator of the Hendrixson estates petitioned the court for interim distribution of Tract II from the Vaught estate. Also on April 26, 1974, the court entered an order directing the executor of the Vaught estate to "surrender, turn over and deliver" Tract II to the administrator of the Hendrixson estates. The concluding paragraph of this order is as follows:

"And The Court Further Finds That the Estate of Ruth Cox Vaught has no further right, title or interest in the said real estate nor right to possession thereto."

On May 30, 1974, the administrator of the Hendrixson estates filed his petitions for authority to sell Tract II. Orders appointing a guardian ad litem for the unknown heirs of Ida, Alice, and Laura Hendrixson were entered the same day. The record reveals no orders authorizing sale of the real estate. The administrator filed reports of sale August 23, 1974, and the court entered orders approving the reports of sale on the same date.

On August 30, 1974, the administrator of the Hendrixson estates filed petitions for distribution. On October 15, 1974, the administrator filed supplemental petitions for distribution in the Hendrixson estates. We quote from those supplemental petitions:

"Your Administrator, appearing by John S. Grimes, his Attorney, respectfully represents:

"1. That he has received information requiring the alteration of certain statements made in his Petition for Distribution heretofore filed herein, as follows:

"(a) Your Administrator has unconfirmed information that the Absentee ———— Hendrixson died after the testator, but before the death of the last life tenant, Ruth Cox Vaught. The said Absentee is believed to have been a non-resident of Indiana and may have left issue or a spouse her surviving the identity of which issue or spouse, if any, is unknown to your Administrator.

\*    \*    \*

"(c) If the said Absentee predeceased the last life tenant Ruth Cox Vaught and it is the law that such death before

the last life tenant prevented the heirs of the Absentee from taking, then the property passes to the heirs of the testator. It is believed that Jane H. Puett, wife of James W. Puett, was the sole heir of James W. Puett, he dying without parents or issue.

\* \* \*

"WHEREFORE, it is prayed:

"That the Court determine who are [sic] entitled to the net assets in the hands of the Administrator and for all other due and proper relief."

A motion to disqualify the trial court judge was granted October 18, 1974, in the Hendrixson estates. A special judge qualified October 28, 1974.

Motions to dismiss the petitions for distribution and supplemental petitions for distribution were filed in May of 1975, and included the following reasons for seeking dismissal: (a) the petitions were filed prematurely; (b) objections filed to the petitions revealed that the interests of Alice, Ida, and Laura, under the Will of James W. Puett, had lapsed; and (c) no issues were before the court. The court did not rule on these motions. Instead, on May 28, 1975, the special judge ordered the attorneys for the heirs of Alice, Ida, and Laura Hendrixson to file petitions to determine heirship; these petitions were filed June 3, 1975.

Before the hearing on the petitions to determine heirship, the regular judge in the Vaught estate entered his decree dated June 25, 1975, in which the court decreed that, upon the death of Ruth Cox Vaught, title to Tract II passed under the residuary clause of Puett's Will to his widow and sole heir, Jane H. Puett, and upon her death intestate, to her heirs.

The court held a hearing on the petitions for determination of heirship in the Hendrixson estates July 7, 1975. On July 8, 1975, the court entered its decrees determining heirship. These decrees concluded as follows:

"It IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that JOHN E. DOWD, Administrator

of the estate of ——————— HENDRIXSON, be and he is hereby ordered to file the Schedule of All Property for inheritance tax purposes within fourteen (14) days of the date hereof and thereafter to file his Final Accounting and Petition for Distribution and Closing the Decedent's Estate as provided above."

Bryan Overpeck challenges these orders determining heirship.

First we consider the contention of the Hendrixson heirs that Overpeck lacks standing to appeal the orders determining heirship because he does not claim to be an heir of the Hendrixsons. The content of the orders reveals that the trial court did more than determine heirship; its orders contemplate distribution of assets claimed by Overpeck. IC 1971, 29-1-1-22 (Burns Code Ed.) provides:

"Any person considering himself aggrieved by any decision of a court having probate jurisdiction in proceedings under this [Probate] Code may prosecute an appeal to the court having jurisdiction of such appeal. Such appeal shall be taken as appeals are taken in civil cases. Executors, administrators, guardians and fiduciaries may have a stay of proceedings without bond."

Overpeck is an heir of Jane Puett and would receive a portion of the proceeds from the sale of Tract II if the devise to Alice, Ida, and Laura lapsed. Therefore, Overpeck considers himself aggrieved by the orders of the trial court and has standing to bring this appeal.

The Hendrixson heirs further argue that Overpeck waived his right to appeal because he accepted the benefit of the April 15, 1974, decree (adjudicating title to Tract I). First we note that any benefit Overpeck received was from a decree in the Vaught estate and not from any decree in the Hendrixson estates; he appeals from decrees in the Hendrixson estates. Further, one is not prevented from appealing a judgment merely because the appellant has accepted benefits of the judgment. If the appellant loses, he is required to restore any benefits accepted, together with inter-

est and/or damages, but he is not prevented from appealing. *Indiana & Michigan Electric Co.* v. *Louck* (1962), 243 Ind. 17, 181 N.E.2d 855. Overpeck has not waived any right to appeal the orders determining heirship.

Jurisdiction has been defined as "the legal power, as distinguished from the right, to entertain any matter of proceeding, and to act therein." *State ex rel. Wilson* v. *Howard Circuit Court* (1957), 237 Ind. 263, 267, 145 N.E.2d 4, 6.

In *Squarcy* v. *Van Horne* (1975), 163 Ind. App. 64, 321 N.E. 2d 858, appellants raised an issue concerning the propriety of a trial court's dismissing a cause for lack of jurisdiction while a motion for change of venue is pending. We quote from Judge Garrard's opinion:

> "It is well recognized that lack of jurisdiction of subject matter may be raised at any time. In fact, if it appears, it is the duty of the court *sua sponte* to both raise and determine the question. This rule applies not only to general subject-matter jurisdiction involving the authority of the court to determine the kind of case in question, but also to the specific jurisdictional averments necessary to the maintenance of special statutory proceedings." 321 N.E.2d 858, 859.

The jurisdiction of a court to grant letters of administration is derived from statutory law. If the court issues letters not authorized by a statute, such letters are void. *Chicago, I. & L. Ry.* v. *Hemstock* (1936), 102 Ind. App. 654, 4 N.E.2d 677.

In general, estate proceedings may be commenced in the county in Indiana where decedent had his domicile at time of death; if not domiciled in Indiana, in the county where he left property at time of his death; or in the county to which any property belonging to his estate may have come after his death. IC 1971, 29-1-7-1 (Burns Code Ed.).

The Hendrixson estates purportedly were opened pursuant to the provisions of IC 1971, 29-2-5-1 (Burns Code Ed.):

"When any *resident of this state* shall have absented himself from his usual place of residence and gone to parts unknown for a period of five [5] years, without having made any sufficient provision for the care and management of his property, real or personal, owned by him at the time he so absents himself, or which may be subsequently acquired by him, either by inheritance or otherwise, . . ." (Emphasis added.)

The hearing July 7, 1975, provided evidence that Alice, Ida, and Laura had never been residents of Indiana. The estate proceedings prescribed by IC 1971, 29-2-5-1 (Burns Code Ed.) apply only to persons who at some time have been residents of Indiana. Absentee estate proceedings for Alice, Ida, and Laura, therefore, were not authorized by statute. The trial court had no jurisdiction to grant letters of administration. The letters of administration were void.

Even general estate proceedings require domicile in Indiana or assets in Indiana before jurisdiction can attach. IC 1971, 29-1-7-1 (Burns Code Ed.). The hearing revealed that Alice, Ida, and Laura did not die domiciled in Indiana. The court's construction of the Puett Will determined that title never vested in Alice, Ida, and Laura, so they had no assets in Indiana.

When a court is without jurisdiction, it possesses the power to do nothing except enter an order of dismissal. *Squarcy* v. *Van Horne, supra.*

Although our conclusion on the issue of jurisdiction summarily answers the remaining contentions of the Hendrixson heirs, their arguments would not prevail even if the trial court had possessed jurisdiction in the Hendrixson estates. Briefly, the heirs contend that Overpeck waived any claim to the real estate and proceeds from the sale when he failed to object to the opening of the Hendrixson estates, the interim distribution from the Vaught estate, and the sale of the real estate by the Hendrixson estates. We find no such waiver.

The absentee estates were opened at a time when residency and survivorship status of Alice, Ida, and Laura had not

been determined. Apparently no one protested the interpretation that Alice, Ida, and Laura were vested with title to Tract II if they survived Ruth Cox Vaught. Bryan Overpeck had no reason to object when estates were opened and administered for the benefit of Alice, Ida, and Laura, and he did object when the trial court attempted to distribute proceeds to someone other than Alice, Ida, and Laura.

The interim distribution was not prejudicial to Overpeck's interest. A life estate measured by the tenant's own life is an asset of the life tenant only as long as the life tenant lives; nothing passes to his estate for administration. *Eltzroth* v. *Binford* (1880), 71 Ind. 455. As construed by the trial court, the Puett Will gave Vaught only a life estate in Tracts I and II. When Vaught died, the real estate in which she held a life estate did not become an asset of her estate. Instead, as Puett's Will was construed, title to Tract I vested in Bryan Overpeck; title to Tract II vested in Vaught's surviving children (none), or Alice, Ida, and Laura if they survived Vaught (they did not survive Vaught), or the heirs of Jane Puett.

The trial court ordered interim distribution of Tract II to the Hendrixson estates from the Vaught estate April 26, 1974. Such interim distribution can only be likened to a quit claim disposition, since the real estate was not an asset of Vaught's estate.

Bryan Overpeck does not claim an interest in the real estate or proceeds as an heir of Vaught but rather as an heir of Jane Puett. Therefore, he had no reason to protest the interim distribution in the Vaught estate.

The Hendrixson heirs discredit the June 25, 1975, decree in the Vaught estate. They insist that the interim distribution terminated all jurisdiction of the court to enter decrees in the Vaught estate concerning title to Tract II. We disagree.

IC 1971, 29-1-6-5 (Burns Code Ed.) provides:

"The court in which a will is probated shall have jurisdiction to construe it. Such construction may be made on the petition of the personal representative or of any other person interested in the will; or, *if a construction of the will is necessary to the determination of an issue properly before the court, the court may construe the will in connection with the determination of such issue. . . .*" (Emphasis added.)

The petition filed in the Vaught estate asked the court to construe Puett's Will because of a possibility that Vaught might have received fee simple title rather than a life estate. Additionally, the petition included this paragraph:

"(c) If Item Second of the will of James W. Puett, deceased did not effectively dispose of Tracts I and II of the real estate hereinabove described, and if Ruth Cox Vaught did not hold fee simple title to said real estate at the time of her decease, the Court should determine who are the owners of such real estate at the present time."

The nunc pro tunc entry dated April 15, 1974, specifically decreed that title to Tract I vested in Overpeck but was silent as to vesting of title to Tract II. The Hendrixson heirs rely upon a finding contained within the nunc pro tunc entry:

"Court further finds that under the language of Item Second of the will of James W. Puett, a remainder interest in all of the remaining real estate owned by James W. Puett at the time of his death, herein referred to as Tract II, was limited to the three daughters of the testator's sister, Lousia Hendrixson, by her second marriage, namely, Alice, Ida and Laura."

They insist that this language, in essence, vested descendible title in Alice, Ida, and Laura. This finding is ambiguous. Was the remainder "limited" to Alice, Ida, and Laura to the exclusion of lapse, or "limited" to Alice, Ida, and Laura to the exclusion of the heirs of Alice, Ida, and Laura? On June 25, 1975, the trial court specifically adjudicated that title to Tract II passed under the residuary clause of the will of James W. Puett because Alice, Ida, and Laura had failed to survive Ruth Cox Vaught. No issue is before this court concerning

the construction imposed upon the Puett Will. We hold that the trial court had jurisdiction to construe the Puett Will as part of the proceedings in the Vaught estate. IC 1971, 29-1-6-5 (Burns Code Ed.). Once it gained such jurisdiction, the trial court had power to complete the construction as to Tract II as well as to Tract I. The interim distribution, as stated previously, was in the nature of a quit claim disposition and did not terminate the jurisdiction of the trial court for purposes of completing the construction of the Puett Will.

The heirs cite IC 1971, 29-1-15-12 (Burns Code Ed.).[2] This statute empowers a court with jurisdiction in the estate proceedings to conduct quiet title proceedings in conjunction with a petition to sell real property. The petition to sell must specifically seek such relief, however; the confirmation of a sale of real estate does not *ipso facto* quiet title. In this case, the trial court did not possess jurisdiction to quiet title or even to order the sale.

The heirs cite IC 1971, 29-1-15-19 (Burns Code Ed.).[3] This statute does not enhance their argument, however, for the trial court did not have jurisdiction in the Hendrixson estates, as required by subparagraph (a) (1) of that statute.

In summary, the record reveals that:

(a) the trial court had jurisdiction to construe the Puett Will in the Vaught estate since such construction was

2. "Upon any petition to sell or mortgage real property the court shall have power to investigate and determine all questions of conflicting and controverted title, remove clouds from any title or interest involved, and invest purchasers or mortgagees with a good and indefeasible title to the property sold or mortgaged. *When the petition to sell or mortgage seeks such relief* notice shall be given as in civil actions of like nature and the court is authorized to issue appropriate process and notices in order to obtain jurisdiction to so proceed against adverse parties." (Emphasis added).

3. "(a) No sale of any real estate made by a personal representative or guardian under the provision of this [Probate] Code, shall be voided on account of any irregularity or defect in the proceedings, if it shall appear:
"(1) That the sale was authorized by the court having the jurisdiction of the parties and the subject-matter;
"(2) That notice of the time and place of sale was given in the manner provided by law; and
"(3) That the premises were sold accordingly and are held by or under one who purchased them in good faith."

necessary to resolve an issue presented in the Vaught estate;

(b) the April 15, 1974, nunc pro tunc entry in the Vaught estate adjudicated the vesting of title to Tract I in Bryan Overpeck;

(c) the June 25, 1975, decree in the Vaught estate adjudicated vesting of title to Tract II in the heirs of Jane Puett;

(d) the trial court acted without jurisdiction to administer the Hendrixson estates, for the absentee estate proceedings are special statutory proceedings available only for administration of estates of persons who at some time were residents of Indiana; Alice, Ida, and Laura never resided in Indiana.

We reverse and remand for further proceedings not inconsistent with this opinion.

Lowdermilk, J., concurs; Garrard, J., (participating by designation) concurs in result.

NOTE.—Reported at 364 N.E.2d 1043.

## ON APPELLEES MOTION FOR MODIFICATION OF JUDGMENT AND PETITION FOR REHEARING

ROBERTSON, C.J.—The appellee John E. Dowd, Administrator of the Estates of Alice Hendrixson, deceased, Laura Hendrixson, deceased, and Ida Hendrickson, deceased, has petitioned this Court to modify its original opinion, and we do so by stating that our holding is modified by taking into consideration IC 1971, 29-1-10-19 (Burns Code Ed.). That section recognizes as valid the sale of the property in question and the authority of the personal representative to make the sale, and we so hold. The dispute now revolves about the disposition of the proceeds of the sale.

The petition for rehearing filed by appellees Helen Lucile Kimball, Dustin Bruce Kimball, Alice Marian (Arrington) Ibey, Amy Elizabeth (Arrington) Muhlebach, Ester T. (Arrington) Chelte, Mary Louise (Hanna) Carpenter, Isleta Marie Hanna and Marion Willard Eaton is denied.

Lowdermilk and Garrard, JJ., concur.

NOTE—Reported at 368 N.E.2d 1175.